ROBERT CURTIS BASS
P.O. Box 742
Solana Beach, California 92075
Tel: (718) 619-1643
Fax: (360) 246-7283
EMAIL: robert.bass@yahoo.com
*Robert C Bass, Pro Quer*

FILED

2008 NOV 19  PM 12: 53

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

'08 CV 2135 MMA NLS

Civil Case No.

ROBERT CURTIS BASS, )
          Plaintiff, )
                     )
                     )
                     )
          v. )
                     )
COUNTY OF SAN DIEGO, )
STATE OF CALIFORNIA, )
SAN DIEGO SUPERIOR )
COURT, SAN DIEGO )
DISTRICT ATTORNEY'S )
OFFICE, SAN DIEGO )
COUNTY SHERIFF'S )
DEPARTMENT, STATE BAR )
OF CALIFORNIA, )
          AND )
CALIFORNIA )
DEPARTMENT OF )
CORRECTIONS AND )
REHABILITATION, et.al., )
Additional      Defendants. )
————————————— )

**CIVIL COMPLAINT UNDER CLAYTON, HOBBS AND RICO ACTS WITH VIOLATIONS OF 42 U.S.C §1981(EQUAL RIGHTS UNDER THE LAW) AND §1994 (PEONAGE PROHIBITED)**

*Comes Now*, The Plaintiff, ROBERT CURTIS BASS, a documented Unincorporated United States Corporation of the United States of America ('USA'), USA Passport Number: 016978490 (*see exhibit A*), does hereby submit this civil complaint under the civil and criminal prohibitions, provisions and statutes of the *CLAYTON ANTITRUST, RICO, and HOBBS ACTS,* alleging all named defendants did engaged and continue to willfully, intentionally, knowingly deprive, conspire and co-conspire to deprive and deny Bass of Bass' lawful and legal rights under *42 U.S.C.§1981(EQUAL RIGHTS UNDER THE LAW) and §1994 (PEONAGE PROHIBITED)* in their individual as well as in their official capacities respectively, unless otherwise specified and/or noted, while **acting under the color of state law** on December 14, 2005 and currently ongoing:

COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, San Diego District Attorney ('SDDA') and Board of Governor Member for the State Bar of California-Bonnie M. Dumanis in her individual and official capacity, STATE BAR OF CALIFORNIA, a Public California Corporation, San Diego Deputy District Attorney ('DDA')-Fiona Khalil in her official capacity as the prosecuting attorney for the People of the State of California, San Diego District Attorney Investigator ('SDDAI')-Joseph Cargel in his individual and official capacity as the investigating and arresting officer for the SDDA, SUPERIOR COURT of California, Central Division, a California Corporation, San Diego County Sheriff's Department ('SDCSD'), California Department of Corrections and Rehabilitation ('CDCR'), CDCR Secretary-Matthew Cate in his individual capacity, Richard J. Donovan Correctional Institute ('RJD'), a California Corporation contracted with the CDCR and State of California, RJD; Chief Executive Officer[1] ('CEO') in his/her individual capacity, California Institute for Men ('CIM'), a

2

California Corporation contracted with the CDCR and State of California, CIM; CEO in his/her individual capacity, California Rehabilitation Center ('CRC'), a California Corporation contracted with the CDCR and the State of California, CRC; CEO-Matthew M. Martel in his individual capacity, CRC; Case Records Supervisor-D. Norris in her individual capacity, CRC; Case Manager-Dorothy Dotson in her individual capacity, Volunteers of America-Los Angeles and Community Correctional Re-entry Center ('VOA-LACCRC') Program Manager/Owner-Loretta S. Blake in her individual capacity and then VOA-LA Parole Agent ('PA') in charge, James McGruder in his individual capacity, Centinela State Prison ('CSP'), a California Corporation contracted with the CDCR and the State of California. CSP; CEO-Michael Smolesky in his individual capacity, CSP; Case Records Manager and Supervisor in his/her individual capacity, California State Prison-Los Angeles ('CSP-LA'), a California Corporation contracted with the CDCR and the State of California, CSP-LA; CEO in his/her individual capacity, CSP-LA; Case Records Manager/Supervisor, CDCR Board of Parole Hearings ('BPH'), BPH; Deputy Commissioner-Joseph Muga in his individual and official capacity, CDCR Division of Adult Parole and Operations ('DAPO') San Diego Region 4; Unit 2 PA- Jacqueline Chandler in her individual and official capacity.

## COMPLAINT

1.    On December 14, 2005, Bass asserts all named defendants willingly, knowingly and intentionally did, by means of obstruction, delay and grossly affecting Bass' business activities by '*interference in* Bass' *interstate and foreign commerce*' activities preventing Bass from <u>enforcing a legally binding business contract between Bass and Bass' clients when</u>

3

defendant(s) unlawfully detained and seized Bass's person and property without lawful and legal authority **utilizing the 'enactment of a special penal statute California Penal Code Section 803(c)[1]'**, '*with the intent of holding Bass in and placing Bass in a condition of peonage to serve a penal sentence through the collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which Bass is or was engaged in, or the business activities of which affect, interstate or foreign commerce'* in violation of Bass' lawful and legal right to equal protection and equal rights, treatment, due process, prohibition and freedom against unlawful and illegal detention, seizure, search and arbitrary arrest of Bass's person and property under *42 U.S.C. §1981(EQUAL RIGHTS UNDER THE LAW) and 42 U.S.C. §1994(PEONAGE PROHIBITED) 18 U.S.C. §§1581(a), 1589(1),(2) and (3), 1592, 1951(a) HOBBS ACT, and 1962(a), (b) and (c),* under the *RACKETEERING INFLUENCE AND CORRUPT ORGANIZATION ACT, RICO ACT 18 U.S.C. §1961,* as so defined under the *"CLAYTON ANTITRUST ACT", 15 U.S.C. §12, "An Act to protect trade and commerce against unlawful restraints and monopolies".*

2.      Defendants to the present date, continue to collectively, with willfulness and malicious intent engage in unlawful activities directed towards Bass to directly and/or indirectly conspire/co-conspire to deprive

---

[1]**California Penal Code Section 803(c)**: A limitation of time prescribed in this chapter does not commence to run until the discovery of an offense described in this subdivision. This subdivision applies to an offense punishable by imprisonment in the state prison, a material element of which is fraud or breach of a fiduciary obligation, the commission of the crimes of theft or embezzlement upon an elder or dependent adult, or the basis of which is misconduct in office by a public officer, employee, or appointee, including, but not limited to, the following offenses: (1) Grand theft of any type, forgery, falsification of public records, or acceptance of a bribe by a public official or a public employee.

and deny Bass of Bass' lawful and legal right to business activities through a *'continued pattern of racketeering activity involving fraud, wire fraud, embezzlement, swindle, scam, extortion and false imprisonment **along with falsification of an official government document**,* implementing actual verbal and threatened use of force, violence and fear of personal injury, along with knowingly and willingly engaging in *'verbal threats of serious harm to and physical restraint against* Bass' *person and property, by means of a plan, scheme and pattern intended to cause* Bass *to believe that, if* Bass *did not perform such labor or services* Bass *would suffer serious harm, physical restraint and be placed into or returned to a condition of peonage, slavery and involuntary servitude against* Bass' *will'*, thereby, continuing to deny and deprive Bass of lawful trade and business activities, affecting and *'interfering with interstate and foreign commerce, through a pattern of racketeering activities'.* Bass has been instructed that Bass is prevented from maintaining a financial institution savings account or any other financial institution custodial account with any financial institution within the State of California, outside of the State of California and outside of the United States of America. Bass has also been instructed that Bass can not directly or indirectly have ownership in or own a business within the State of California, outside of the State of California or outside of the United States of America to maintain a livelihood or establish lawful employment or offer services, products and conduct business with any other entity within the State of California, outside the State of California and outside of the United States of America. Defendants continue to willfully engaged in intentional interference of Bass' interstate and foreign commerce activities depriving and denying Bass of a livelihood and lawful employment and business activities affecting interstate and foreign commerce.

**4.**     On December 16, 2005 through May 10, 2006, the defendants acting collectively, with willfulness and malicious intent, did by '*means of the abuse and threatened abuse of law and legal process*' conspired and co-conspired to successfully bringing Bass into the Superior Court of San Diego County, Central Division against Bass' will and finding Bass guilty of 12 felony criminal charges '*with the intent of placing* Bass *into a condition of peonage and physical restraint*', thereby '*restraining and restricting* Bass' *trade and business activities affecting and interfering with interstate and foreign commerce by threats and violence*'.

**5.**     On April 12, 2006, the Superior Court, County of San Diego, Central Division did with willfulness violate Bass' lawful right under *42 U.S.C. §1981; EQUAL RIGHTS UNDER THE LAW*, when the Superior Court, County of San Diego, Central Division conspired and co-conspired to willfully and intentionally deny and deprive Bass of Bass' U.S. Constitutional right to the compulsory process and obtaining witnesses in Bass' favor for Bass' defense, along with denying and depriving Bass of assistance of legal counsel on May 10, 2006, when Bass requested assistance of legal counsel and a trial by jury.

**6.**     On May 30, 2006, defendants did violate Bass's lawful right to freedom of movement, freedom from being placed into a condition of peonage, slavery and involuntary servitude under *42 U.S.C.S §1994* and the *13th Amendment to the U.S .Constitution* when the Superior Court remanded Bass to the custody, care, supervision, control and management of the CDCR against Bass' will, continuing to effectively '*restrict, restrain and denying* Bass' *lawful right to freedom of movement and travel affecting and interfering with interstate and foreign commerce activities for Bass' business*' for a period of 4 years and 4 months, thereby collectively,

willingly and intentionally with malice subject and sanction Bass to a *condition of peonage, slavery, involuntary servitude and forced labor*; *to prevent or restrict or to attempt to prevent or strict without lawful authority,* Bass' *liberty to move and travel for Bass' business, in order to maintain the labor or services of* Bass, in order to collect an unlawful debt, *thereby depriving* Bass *of society, livelihood and lawful employment for **44 months** affecting interstate and foreign commerce activities* in violation of *18 U.S.C §§1581, 1589, 1592, 1951* and *1962*.

7.     SDDA's Office and DDA-Khalil did knowingly authorize SDDAI-Cargel to **unlawfully detain and falsely imprison Bass without a valid warrant and certificate of probable cause**, through continued verbal and physical threats of violence, force and fear of injury to Bass' person and property under color of official right, acting through the unlawful authority of the San Diego District Attorney's Office on December 14, 2005 with '*the intent of placing* Bass *into a condition of peonage'*, through coercion, extortion, *'physical restraint and restricting* Bass' *freedom of movement to travel for* Bass' *business, affecting interstate and foreign commerce activities'*.

8.     On May 30, 2006 to the present date and on-going Bass asserts the CDCR, RJD, CIM, CRC, VOA-LA CCRC, CSP, CSP-LA, BPH and DAPO willfully, intentionally and knowingly did engage and continue to engage in a pattern of racketeering activities in violation of Bass' lawful and legal right under *42 U.S.C. §1981(EQUAL RIGHTS UNDER THE LAW) and 42 U.S.C. §1994(PEONAGE PROHIBITED) 18 U.S.C. §§1581(a), 1589(1),(2) and (3), 1592, 1951(a) HOBBS ACT, and 1962(a), (b) and (c)* under the *RACKETEERING INFLUENCE AND CORRUPT ORGANIZATION ACT, RICO ACT 18 U.S.C. §1961*, as so defined under

7

the *"CLAYTON ANTITRUST ACT"*, *15 U.S.C §12*, ***"An Act to protect
trade and commerce against unlawful restraints and monopolies",*** *by and
through collection of an unlawful debt of approximately $100,000 to
acquire, maintain, directly or indirectly, any interest in and control of any
enterprise which* Bass *was or may have been engaged in, or the activities of
which effect, interstate commerce, deducting monies earned by* Bass *and
committing financial institution fraud, wire fraud, mail fraud, swindle, scam,
falsification of government documents in furtherance of peonage, trafficking,
slavery, involuntary servitude and forced labor by knowingly and
intentionally holding* Bass *to a condition of peonage, to serve a penal
sentence of approximately (16+) months beyond the scheduled and
calculated release date from custody and confinement restricting and
restraining* Bass' *freedom of movement and travel denying Bass lawful
employment, livelihood and society interfering with interstate and foreign
commerce.*

## RELIEF REQUESTED

Pursuant to *18 U.S.C. §1964(c); CIVIL REMEDIES* and *15 U.S.C.
§15(a); SUITS BY PERSON INJURED*, Bass is seeking **One Billion Five
Hundred Million United Stated Dollars ($1,500,000,000USD)** in
compensatory, personal injury, punitive, expectation and reliance damages
for loss of income, society, livelihood, freedom of movement to the present
date, lawful employment and loss of business and personal assets as Bass
had a legal binding performance contract with a client, which provided Bass
with a initial consulting fee and up to 10% of any and all monetary proceeds
successfully acquired and/or obtained by Bass' client based on services
rendered and provided to Bass client(s). (*see exhibits B and C*)

Bass also seeks **Preliminary, Prohibitory & Reparative Relief** preventing all named defendants, affiliates, agents, officers and other outside third party local, state and federal agencies, entities and/or organizations with a direct or indirect relationship with one or more of all named defendants from causing irreparable injury to Bass's person and property, through the Court's issuance of a temporary restraining order against all named defendants preventing defendants from engaging in continued actions against Bass and exoneration of Bass' criminal conviction and destruction of all records and files from the California Department of Justice Criminal Offender Information System, restoration of Bass' voting rights, restoration of Bass' 2nd Amendment Right under the U.S. Constitution, submission of a letter of destruction issued to NCIC, FBI and the U.S. Department of Justice; as Bass was actively under review and consideration for conditional lawful employment with a U.S. Government Agency prior to the actions initiated by all named defendants collectively.

Currently Bass is unable to secure lawful employment within the area of expertise, training and knowledge that Bass received while as an active duty member of the U.S. Navy Special Operations Community from January 1988 through January 1995.

## JURISDICTION

Bass asserts jurisdiction is proper with the U.S. District Court, Southern District of California and Bass has a legal and a civil right to submit this complaint under *42 U.S.C.S §1981; EQUAL RIGHTS UNDER THE LAW*:

*(a) "__All persons__ within the jurisdiction of the United States __shall have the same right__ in every State and territory __to make and enforce contracts, to sue__, be parties, __give evidence__ and __to the equal benefit of all laws__ and __proceedings for the security of persons and property 'as is enjoyed by white citizens'__, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."*

9

Bass is in fact, a documented U.S. born African-American National. Statistical evidence will, in fact, substantiate and support Bass' assertions that there is official documented proof that *'a significant racial disparity exist'* within the County of San Diego with regard to more severe punishments, penalties and sanctions that are imposed on African-American first time, non-violent, white collar or economic crime offenders within the criminal and civil judicial system that have been and are adjudicated within the County of San Diego and the State of California compared to similarly and/or identically situated Caucasian first time and/or repeat offenders of the same category whom receive significantly lower punishments, penalties and sanctions.

In addition, **Federal Rules of Civil Procedure Rule 8 (e)(2),** states,

*"When two or more statements are made in the alternative and one of them is made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may state as many separate claims or defenses as it has, regardless of consistency, and whether based on legal, equitable, or maritime grounds."*

Bass asserts Bass is entitled to issuance of legal process on all named defendants in this Federal Antitrust action and complaint, regardless of the fact, that Bass served a total aggregate term of unlawful imprisonment and detention in the California State prison system for a total of 3 years and 11 months of a total imposed term of 4 years and 4 months instituted by the Superior Court of San Diego, Central Division on May 10, 2006.

Bass has been out of physical institution custody and confinement of the state prison system since October 20, 2008 and is currently under the jurisdictional control, custodial supervision and management of the Division of Adult and Parole Operations in San Diego County and the State of California for a period not to exceed 4 years. The *Prison Litigation Reform Act of 1995* ('PLRA') is non-applicable to Bass in this Antitrust action

as Bass' complaint does not meet the PLRA's manadate criteria and requirements for filing and review by the court prior to issuance of service of legal process on all named defendants. Bass asserts the **'PLRA applies to prisoner civil rights claims'** under *42 U.S.C. §1983* cases involving denial and deprivations of civil rights and prison conditions. The PLRA does not apply to Bass claims under the ***Clayton, Hobbs and Rico Acts, 42 U.S.C. §§1981 and 1994 (PEONAGE PROHIBITED).*** The court should allow and order issuance service of legal process by the United States Marshal Service to all named defendants respectively.

## CLAIM #1

**STATE OF CALIFORNIA, STATE BAR OF CALIFORNIA, SDDA-BONNIE M. DUMANIS, DDA-FIONA KHALIL, SDDAI-JOSEPH CARGEL AND SDCSD DID CONSPIRE AND CO-CONSPIRE WILLINGLY, KNOWINGLY AND INTENTIONALLY TO DETAIN, RESTRICT AND RESTRAIN BASS' FREEDOM OF MOVEMENT TO TRAVEL FOR BASS' BUSINESS, DEPRIVING BASS OF BASS' RIGHT TO ENFORCE AND COMPLETE A BINDING CONTRACT, LAWFUL EMPLOYMENT, LIVELIHOOD AND SOCIETY, THEREBY INTERFERRING WITH BASS' INTERSTATE AND FOREIGN COMMERCE ACTIVITIES.**

1.     On December 14, 2005, Bass exited Bass' place of business and residence located in Encinitas, California, County of San Diego for a scheduled business trip to Dusseldorf, Germany to initiate and complete a business contract transaction for a client, whom Bass had a legally binding consulting contract agreement with and full power of attorney assigned to Bass to conduct all business for Bass' client(s) to invest, allocate, acquire and disburse all funds on deposit for Bass' client(s) with a financial institution in London, England, United Kingdom.

       A fast approaching black unmarked pickup truck pulled in front of the

Ford Explorer Bass was sitting in, preventing Bass from moving the vehicle from the parking spot on the street adjacent to Bass' residence. An unknown individual exited the black pickup truck brandishing a handgun, aimed at Bass and instructed Bass to exit the vehicle Bass had been sitting in, forcibly removing Bass from the Ford Explorer through physical and verbal threats of serious physical harm and violence to Bass' person and property if Bass decided to refuse to comply with the verbal instructions given by the individual brandishing the handgun. Bass was *'physically restrained and further restricted of freedom of movement and exercise of free will to move and travel interfering with interstate and foreign commerce.'*

2.     Another unknown individual, whom later identified himself as SDDAI-Joseph Cargel, approached Bass while Bass was being physically restrained by unknown individual with the handgun aimed directly at Bass. When Bass asked SDDAI-Cargel, *"What is this all about? What is going on here?"* SDDAI-Cargel stated, *"I have an 'outstanding warrant' for your arrest!"* Bass asked SDDAI-Cargel if Bass could view the alleged *'outstanding warrant'* for Bass' detention and seizure of Bass' person and property? SDDAI-Cargel, stated, *"We'll get to that in a second. I need you to have a seat on the curb behind the vehicle for a second!"* SDDAI-Cargel then proceeded to ask Bass for verbal permission to conduct a search of the vehicle and its' contents Bass was removed from. <u>Bass verbally denied SDDAI-Cargel permission to conduct a search of Bass' person and property under Bass' control and possession *not until* SDDAI-Cargel provided Bass with a copy for viewing of the alleged *'outstanding warrant'*, authorizing the lawful detention, seizure and search of Bass' person and property</u>.

        <u>SDDAI-Cargel</u> and several unknown plain clothed individuals

proceeded to conduct a search and seizure of the contents and property within the Ford Explorer Bass was removed from against Bass' repeated verbal denial of permission to conduct a seizure and search of Bass' person and property under Bass' control and possession at the time of Bass' initial detention and seizure of Bass' person and property, thereby *'restricting and restraining* Bass' *freedom of movement of* Bass' *own free will affecting interstate and foreign commerce.'*

3.　　　Bass asserts within the approximate time span of about 1-2 and a half hours of verbally being informed, *"don't you move a muscle or try to stand up or go anywhere"*, Bass made several additional verbal requests, asking SDDAI-Cargel to provide Bass with a copy of the alleged *'outstanding warrant'* for viewing for Bass' detention, seizure and search of Bass' person and property. **Bass asserts SDDAI-Cargel never provided a copy of the alleged 'outstanding warrant' for viewing to Bass as Bass had repeatedly verbally requested within the 4 and half or so hours Bass was detained, seized, searched and restricted of Bass' freedom of movement by SDDAI-Cargel.**

　　　　**In fact, SDDAI-Cargel never had in his possession at the initial time of Bass' detention, seizure and search of Bass' person and property under Bass's control or possession, a valid signed and issued 'outstanding felony warrant' for the detention, seizure and search of Bass on December 14, 2005.**

　　　　**In fact, SDDAI Cargel testified under oath of penalty of perjury in the Superior Court of the State of California, County of San Diego, Central Division on January 13, 2006 and April 3, 2006, that he(Cargel), *"I walked the warrant over to Judge David Danielson for signature on November 22, 2005*, when in fact, SDDAI-Cargel did not obtain a felony**

13

**warrant for Bass' detention and seizure until <u>December 14, 2005 from
Superior Court Magistrate Judge Frederick L. Link (Civil Division).</u>**

SDDAI-Cargel and several unknown plain clothed individuals
continued to remove and confiscate property and other items from the Ford
Explorer, while Bass remained physically restrained and restricted of
freedom of movement against Bass' will, seated on the curbside behind the
Ford Explorer until SDDAI-Cargel and several unknown individuals
completed their seizure and search of the contents of property removed from
the vehicle and Bass' person. Bass was then placed into an unmarked light
blue Ford Taurus vehicle by SDDAI-Cargel in physical restraints and placed
into the front seat and remained physically restrained in the vehicle for
approximately an additional 20-30 minutes.

SDDAI-Cargel transported Bass from Encinitas, California to the San
Diego County Central Jail located in downtown San Diego in the City of San
Diego.

During transport of Bass, Bass again verbally asked SDDAI-Cargel if
Bass could be provided a copy for viewing of the alleged *'outstanding
warrant'* for Bass' detention, seizure and search of Bass' person and
property. <u>SDDAI-Cargel had never informed Bass of the nature and cause of
the detention, seizure and search of Bass' person and property upon Cargel's
initial arrival upon the location of Bass' initial detention, seizure and
search of Bass' person and property in Encinitas, California or during the
entire time that SDDAI-Cargel and several unknown individuals conducted
an unauthorized seizure of Bass's person and property under Bass' control
and possession.</u>

**4.** Upon arrival in downtown San Diego, City of San Diego, Bass was
driven to an unknown parking lot adjacent to and/or what seem to be 1or 2

14

blocks away from the San Diego Superior Courthouse, where <u>SDDAI-Cargel</u> exited the vehicle and <u>told Bass to wit</u>, *"Just sit tight and stay put! Don't try to go anywhere!"* SDDAI-Cargel proceeded to be having a conversation with another individual, whom was later identified as FBI-Special Agent Jeffery Horner. Bass remained in the vehicle *'physically restrained and restricted of freedom of movement'* in an unknown parking lot for approximately 10-15 minutes or longer. Bass was then removed from the vehicle by SDDAI-Cargel and FBI-Special Agent Horner. Bass asked SDDAI-Cargel again, *"Where are we going? What is this all about?" Where is this 'outstanding warrant' you spoke of?"* SDDAI-Cargel stated to wit, *"We'll get to that when we have a chance to talk and ask you (*Bass*) some questions. Then we'll let you be on your way and catch a later flight!"* Bass was then escorted on foot, under physical restraint by FBI-Special Agent Jeffery Horner and SDDAI-Cargel to what appeared to be approximately 2-3 blocks to the San Diego County Central Jail in downtown San Diego, where Bass was subsequently taken to an interview room in the Central Jail and *'physically restrained to a table by the left wrist of* Bass*, further restricting Bass' freedom of movement and travel of* Bass' *free will.'* SDDAI-Cargel and Special Agent Horner proceeded to interview Bass for approximately 2 hours and 30 minutes. Bass again asked SDDAI-Cargel for a copy of the *'outstanding warrant'* Cargel allege he(Cargel) had in his possession for viewing?

> **Bass was never *Mirandized* until after Bass was interviewed by SDDAI-Cargel and was asked to sign a Miranda document on what appeared to be official U.S. Department of Justice and FBI letterhead handed to Bass by Special Agent Horner.**

**5.**      Bass was subsequently photographed under physical restraint, booked,

processed and placed into the custody, care, management, control and supervision of the San Diego County Sheriff's Department at the Central Jail located in downtown San Diego in the City of San Diego and remained under the custody and physical control of the SDCSD from December 14, 2005 until May 30, 2006 with a bond/surety of an initial $200,000 which was subsequently increased to $1 Million.

6.      Bass asserts the <u>SDDA Office's</u> and <u>DDA-Khalil provided</u> the <u>sole authorization to SDDAI-Cargel for the unlawful detention, seizure and search of Bass's person and property without lawful authority, without a valid and signed certificate of probable cause and sworn affidavit of claim to a magistrate granting said lawful authority to obtain the detention, seizure and search of Bass' person and property</u>, thereby, effectively through the utilization of the enactment of a special penal statute, California Penal Code §803(c) instituting *'threats of serious harm and physical restraint initiated by SDDAI-Cargel by means of extortion, coercive tactics, scheme, plan and pattern intended to cause Bass to believe that, if Bass did not perform such labor or service's* in the form of providing information to SDDAI-Cargel, Bass would suffer serious harm and continued physical restraint and by *'forceful means of abuse and threatened abuse of law or legal process with the intent of placing Bass into a condition of peonage'*, restraining and restricting Bass' freedom of movement to travel for Bass' business, *'interfering with interstate and foreign commerce activities by threats and violence'*, in willful and intentional violation of Bass' lawful and legal right under *18 U.S.C. §§1581(a), 1589(1), (2) and (3), 1592, 1951(a) HOBBS ACT, and 1962(a), (b) and (c)* under the *RACKETEERING INFLUENCE AND CORRUPT ORGANIZATION ACT, RICO ACT 18 U.S.C. §1961,* as so defined under the *"CLAYTON ANTITRUST ACT"*, *15 U.S.C §12,*

*__"An Act to protect trade and commerce against unlawful restraints and__*
*__monopolies".__*

7.      <u>SDDA-Bonnie M. Dumanis</u> did willingly, intentionally and
knowingly <u>through abuse of official right under the color of authority</u>
as a <u>current member of the Board of Governors</u> for the <u>State Bar of</u>
<u>California</u>, accept official appointment as the <u>current elected District</u>
<u>Attorney of San Diego County</u> in 2002 in conflict and violation of
*__California Constitution Article 7 Section 4__* and the *Political Reform Act*
prohibiting and exempting Dumanis and all DDA's under Dumanis'
supervision and management, from public office and civil service, due to the
fact, that SDDA-Dumanis is an *__'Executive Officer' of the Judicial Branch of__*
*__State Government and a member of a board and/or commission,__* which is
part of the judicial branch of state government, along with being an active
member of a public corporation that is part of the judicial branch of state
government.

Bass submitted several verbal requests to the Superior Court to
dismiss and/or vacate the allegations against Bass between January 13, 2006
and January 14, 2008, due to the conflict of interest that existed and
currently exist with SDDA-Dumanis' position as the DA of San Diego
County and joint appointment by the State Bar of California as a member of
the Board of Governors of the California State Bar Association in violation
of the California Constitution and Political Reform Act and Bass' assertion
that Bass' initial detention, seizure and search of Bass' person and property
was illegal and unlawful, along with the fact that <u>Bass was not brought to</u>
<u>trial in the Superior Court of California, County of San Diego for more than</u>
<u>(81+) days without a valid waiver of Bass' right of a speedy and public trial</u>
in violation of the *__Speedy Trial Act of 1974__*.

Bass asserts the SDDA's Office and County of San Diego detained and seized Bass '*with the intent of placing* Bass *into a condition of peonage to serve a penal sentence, through threats of continued physical restraint, verbal threats of violence, abuse of law and legal process and deprivation of freedom of movement to travel for Bass' business activities, effectively interfering with interstate and foreign commerce within the County of San Diego, State of California, United States of America and outside of the Continental United States of America and all the territories of the United States'*.

The Superior Court was without lawful and legal jurisdictional authority of the claims alleged against Bass. Bass' request for change of venue was never decided upon by the Superior Court, County of San Diego.

Bass was subsequently denied the compulsory process in the Superior Court, County of San Diego and the production of witnesses in Bass' favor for Bass' defense in willful and intentional violation of Bass' lawful and legal right under *42 U.S.C. §1981 (EQUAL RIGHTS UNDER THE LAW and 42 U.S.C. §1994 (PEONAGE PROHIBITED), 18 U.S.C. §§1581(a), 1589(1), (2) and (3), 1592, 1951(a) HOBBS ACT, and 1962(a), (b) and (c)* under the *RACKETEERING INFLUENCE AND CORRUPT ORGANIZATION ACT, RICO ACT 18 U.S.C. §1961,* as so defined under the *"CLAYTON ANTITRUST ACT"*, 15 U.S.C §12, ***"An Act to protect trade and commerce against unlawful restraints and monopolies".***

**8.** The Chairman, Chief Executive Officer and President of the State Bar of California did willingly and knowingly accept appointment of Bonnie M. Dumanis as a member of the Board of Governors of the State Bar of California knowing Dumanis' position and appointment would conflict and be in violation with Dumanis' elected public official, legal and authoritative

position and subsequent appointment as the DDA of San Diego County under the California Constitution, U.S. Constitution, Political Reform Act and State Bar Rules regarding assignment of State Bar District representatives allowed for State Bar District of San Diego County.

### CLAIM#2

**SUPERIOR COURT OF CALIFORNA AND COUNTY OF SAN DIEGO DID WILLINGLY, KNOWINGLY AND INTENTIONALLY WITH MALICE CONSPIRE AND CO-CONSPIRE TO INITIATE ACTIONS TO HOLD BASS TO A CONDITION OF PEONAGE, ALONG WITH AUTHORIZING THE CONTINUED DETENTION AND SEIZURE OF BASS WITH THE INTENT OF PLACING BASS INTO A CONDITION OF PEONAGE, THEREBY RESTRICTING AND RESTRAINING BASS' FREEDOM OF MOVEMENT TO MOVE AND TRAVEL FOR BASS' BUSINESS RESTRICTING AND INTERFERENCE WITH BASS' INTERSTATE AND FOREIGN COMMERCE ACTIVITIES, DEPRIVING AND DENY BASS OF BASS' RIGHT TO LAWFUL EMPLOYMENT, LIVELIHOOD AND SOCIETY.**

1.      Bass asserts the Superior Court of California, County of San Diego, in concert with the San Diego Public Defender's Office, SDDA's Office and DDA-Khalil did on December 16, 2005 through May 10, 2006 conspire and/or co-conspired to continue to deny and deprive Bass' lawful right to freedom to move or travel for Bass' business interfering with Bass' interstate and foreign commerce activities by and through an offer of Bass' willing and/or unwilling cooperation to accept a settlement offer from the SDDA's Office *to be placed into a condition of peonage to serve a penal sentence* for a *per*iod of (16) months of under physical restraint, confinement and loss of Bass' lawful right to freedom of movement to travel for Bass' business through means of extortion, coercion, fraud, threats of continued physical restraint, serious harm to Bass' person and property through the abuse of law

and legal process if Bass refused to agree to accept said settlement of the SDDA's and Superior Court, County of San Diego's '*intent of placing and holding* Bass *to a condition of peonage to serve a penal sentence, in collection of an unlawful debt to acquire, maintain, directly or indirectly, any interest in or control of any enterprise which* Bass *is or was engaged in, activities of which affect* Bass' *interstate and foreign commerce activities*' in willful and intentional violation of Bass' lawful and legal right under *42 U.S.C. §1981 (EQUAL RIGHTS UNDER THE LAW and 42 U.S.C. §1994 (PEONAGE PROHIBITED), 18 U.S.C. §§1581(a), 1589(1),(2) and (3), 1592, 1951(a) HOBBS ACT, and 1962(a), (b) and (c)* under the *RACKETEERING INFLUENCE AND CORRUPT ORGANIZATION ACT, RICO ACT 18 U.S.C. §1961, as so defined under the "CLAYTON ANTITRUST ACT", 15 U.S.C §12,* **"An Act to protect trade and commerce against unlawful restraints and monopolies".**

**2.**     The Superior Court of California, County of San Diego, in concert with the SDDA-Bonnie M. Dumanis through Dumanis' DDA-Fiona Khalil did allege Bass was, in fact, classified as public official, employee and/or appointee under **California Penal Code §803(c),** and the 4-year statute of limitations for prosecution for '*official misconduct in public office for Forgery and grand theft of any type*' applied to Bass. Bass asserts, in fact, Bass is neither and/or was never a California State government or local government public official, employee and/or appointee involved in misconduct in public office involving forgery or grand theft of any type. Bass asserts the Superior Court of California did '*continue to engage in a pattern of racketeering activity involving fraud and related activity in connection with identification documents, swindle, obstruction of justice, extortion, by and through abuse of law and legal process*' continue to

conspire and co-conspire with the County of San Diego and SDDA's Office to continue to physically restrain and restrict Bass' person, property and business activities, '*interfering with interstate and foreign commerce with the sole intent of placing and holding* Bass *to a condition of peonage to serve a penal sentence, in collection of an unlawful debt to acquire, maintain, directly or indirectly, any interest in and control of any enterprise which* Bass *was or may have been engaged in, or the activities of which effect, interstate commerce'.*

3.      On April 3, 2006, Bass rejected a final settlement offer by DDA-Fiona Khalil, by which the SDDA's Office and DDA-Khalil would recommend dismissal of all 12 felony criminal allegations against Bass except for 2 felony counts, which Bass could choose to plead guilty to in exchange for Bass' willingness to be placed and held in a condition of peonage to serve a penal sentence and further '*restraining and restricting* Bass' *freedom of movement to travel for* Bass' *business, loss of society, livelihood and lawful employment for a period not to exceed 24 months.'*

4.      The Superior Court of California, County of San Diego through '*verbal threats, violence, threatened abuse of law and legal process with the sole intent of placing* Bass *in and holding* Bass *to a condition of peonage to serve a penal sentence, in collection of an unlawful debt'*, informed Bass after Bass' rejection of the offer submitted to Bass by DDA-Khalil that Bass would be facing a more severe punishment and penalty in violation of *42 U.S.C. §1981 (EQUAL RIGHTS UNDER THE LAW)*, along with being held and placed into a condition of peonage to serve a penal sentence in collection of an unlawful debt, slavery and involuntary servitude for a period not to exceed 9 years and 8 months, if Bass did not accept the offer by DDA-Khalil and the SDDA's Office in willful and intentional violation of Bass'

lawful legal and right under *42 U.S.C§1994 (PEONAGE PROHIBITED), 18 U.S.C. §§1581(a), 1589(1),(2) and (3), 1592, 1951(a) HOBBS ACT, 1962(a),(b) and (c)* under the *RACKETEERING INFLUENCE AND CORRUPT ORGANIZATION ACT, RICO ACT 18 U.S.C. §1962,* as so defined under the *"CLAYTON ANTITRUST ACT", 15 U.S.C §12,*

 ***"An Act to protect trade and commerce against unlawful restraints and monopolies".***

5.      On May 10, 2006, Bass asserts the Superior Court of California, County of San Diego, Central Division did willingly, knowingly and intentionally conspire and co-conspire to **falsify a government document by issuing an order beyond the 10-day legal statutory time limit allowed regarding issuance of a 'Statement of Objection' or Affidavit contesting Bass' Motion to Disqualify Trial Judge-Roger W. Krauel for bias, prejudice and judicial misconduct**, thereby effectively rendering any movement by the Superior Court of California, County of San Diego, Central District without legal or lawful judicial authority and null or void pertaining to all judicial proceedings regarding Bass.

6.      On December 11, 2007 Bass asserts the Superior Court of California, Central Division did willing and intentionally issue a detainer directing the SDCSD to arrest Bass and compel Bass' physical appearance in the Superior Court of California, County of San Diego on January 14, 2008, against Bass' will '*with the intent of holding and returning* Bass *to a condition of peonage'* thereby, further continuing to willfully, knowingly and intentionally '*restricting* Bass*' liberty to move and travel for* Bass' *business activities interfering with  interstate and foreign commerce, in order to maintain the labor and services of* Bass *in continued furtherance of the collection of an unlawful debt to acquire, maintain, directly or indirectly,*

*any interest in or control of any enterprise which* Bass *was or may have been engaged in, or the activities of which, interstate and foreign commerce'* in violation of Bass' lawful and legal right under *42 U.S.C§1994 (PEONAGE PROHIBITED), 18 U.S.C. §§1581(a), 1589(1), (2) and (3), 1592, 1951(a) HOBBS ACT, 1962(a),(b) and (c)* under the *RACKETEERING INFLUENCE AND CORRUPT ORGANIZATION ACT, RICO ACT 18 U.S.C. §1962,* as so defined under the *"CLAYTON ANTITRUST ACT", 15 U.S.C §12,* <u>*"An Act to protect trade and commerce against unlawful restraints and monopolies".*</u>

## <u>CLAIM#3</u>

**CDCR- SECRETARY; MATTHEW CATE, RJD-CEO, CASE RECORDS MANAGER/SUPERVISOR, CIM-CEO, CASE RECORDS MANAGER/SUPERVISOR, VOA-LACCRC; PROGRAM MANAGER/OWNER-LORETTA S. BLAKE AND PA-JAMES MCGRUDER, CRC-CEO; MATTHEW MARTEL, CASE RECORDS MANAGER/SUPERVISOR-D. NORRIS AND DOROTHY DOTSON, CSP-CEO; MICHAEL SMOLESKY, CASE RECORDS MANAGER/SUPERVISOR, CSP-LA; CEO, CASE RECORDS MANAGER/SUPERVISOR, BPH-JOSEPH MUGA, DAPO; SAN DIEGO UNIT 2 AND PA-JACQUELINE CHANDLER, SDCSD AND SUPERIOR COURT, COUNTY OF SAN DIEGO DID WILLINGLY, KNOWINGLY AND INTENTIONALLY PARTICIPATE AS CONSPIRATORS AND CO-CONSPIRATORS TO INTENTIONALLY HOLDING BASS TO A CONDITION OF PEONAGE AND FORCED LABOR AGAINST BASS' WILL TO MAINTAIN THE LABOR AND SERVICES OF BASS IN COLLECTION OF AN UNLAWFUL DEBT BEYOND THE SCHEDULED DATE OF BASS' LAWFUL AND LEGAL RIGHT TO FREEDOM OF MOVEMENT AND TRAVEL AFFECTING BASS' BUSINESS ACTIVITIES INTERFERING WITH INTERSTATE AND FOREIGN COMMERCE.**

1.      On May 30, 2006, Bass was transported by the SDCSD to the custody, care, control, management, confinement, supervision, confinement

and management of the CDCR at RJD under physical restraint against Bass' will, further restraining Bass from freedom of movement of Bass's free will to travel interfering with interstate and foreign commerce by and through threats of physical violence to Bass' person and property.

2.      Upon arrival at RJD located in San Diego, California, County of San Diego, Bass was stripped search and the SDCSD delivered physical custody and control of Bass over to the CEO of RJD.

During intake processing, <u>Bass was coerced, threatened and forced</u> that <u>Bass was required</u> by the authority of the Secretary of the CDCR-Matthew Cate, <u>to sign and surrender 'Power of Attorney' of Bass' financial obligations and other business affairs over to the control, management, supervision and care of the CDCR and the CEO of RJD.</u>

3.      Bass asserts during a private interview with a RJD administrative official Bass was asked to wit, *"Is there anything you need to tell me Bass?"* Bass stated that documented evidence and legal evidence exist that Bass' continued confinement, custody and physical restraint of Bass' person and property was in fact, unlawful, illegal and without lawful authority. Bass asserts that the administrative official informed Bass that Bass needed to complete and submit a CDCR Form (602) Appeal/Grievance regarding Bass' claims.

4.      Bass remained under the control, physical custody, supervision, management and care of the CEO at RJD until July 17, 2006 and was subsequently delivered to the physical custody, supervision, control, management and care of the CEO at CIM located in Norco, California, County of Riverside, where Bass remained restrained of freedom of movement of Bass's free will to travel interfering with interstate and foreign commerce, until July 26, 2006 and transferred to the physical custody,

supervision, control, management and care of the VOA-LACCRC; program manager/owner, Loretta S. Blake and the DAPO Region 3 under the PA in charge, then James McGruder in Los Angeles, California, County of Los Angeles.

5.    Upon arrival at the VOA-LACCRC on July 26, 2006 Bass was processed and interviewed by PA James McGruder. McGruder stated to wit, *"Is there anything you would like to speak to me about Bass? Are there any problems I need to be made aware of?"* Bass informed McGruder that documented evidence and legal evidence exist that makes Bass's present custody, confinement and imprisonment, along with Bass' restraint of Bass' freedom of movement was, in fact, unlawful, illegal and without lawful authority. Bass requested McGruder consider recommending to the DAPO Region 3 Administrator in Los Angeles, California, a **"RECALL OF COMMITMENT"**, based on the evidence and facts that existed and document proof Bass revealed to PA-McGruder during Bass's interview with McGruder. McGruder informed Bass that Bass needed to complete a CDCR Form (602) Appeal/Grievance detailing Bass's complaints and claims.

Bass asserts PA-McGruder through verbally threats of physical harm, personal injury and violence, when Bass asked PA-McGruder if McGruder was going to supply an 'informal or first level response' to Bass' administrative appeal/grievance addressing Bass' claims and complaints about Bass' continued physical custodial status under the control, management, supervision and care of the CDCR at the VOA-LACCRC further restricting and restraining Bass's freedom of movement of Bass's free will to travel for Bass' business activities, Bass asserts PA-McGruder state to wit, *"Bass! You need to submit and mail your (602)*

*Appeal/Grievance directly to the Secretary of the CDCR in Sacramento,
California for review and consideration. I will not sign anything or offer
any recommendation to your claims or complaints. Do you see this badge
Bass? I am an officer of the State of California! If you really don't feel you
belong here at the VOA-LACCRC, then I can make sure your ass is put back
into a prison cell at Pelican Bay?!" Get the hell out of my face with that! I
don't want to hear about your problems anymore either or I'll get rid of you
in a heart beat!"* Bass remained at the VOA-LACCRC until November 9,
2006, where Bass was allowed to work out in the community, not to exceed
a 30-mile radius of the location of the VOA-LACCRC and was subsequently
transferred to the physical custody, control, management and supervision of
the CEO at CIM in Norco, California. Bass remained at CIM in a prison cell
until February 7, 2007.

6.      On February 7, 2007 Bass was transferred to the physical custody,
control, management, supervision and care of the CEO-Matthew Martel at
CRC in Norco, California. Bass remained at CRC restricted of freedom of
movement of Bass' own free will until May 9, 2008.

7.      Bass asserts on several occasions while at CRC Bass was verbally
threatened by numerous CRC administrative officials under the management
and control of the CEO-Matthew Martel that if Bass refused to work for the
CEO at CRC Bass would suffer further physical restraint and/or serious
harm to Bass' person and property by means of abuse and threatened abuse
of law or legal process to hold Bass to a condition of peonage against Bass'
will if Bass continued to refuse to work for the CEO-Matthew Martel in
exchange for an early release from physical custody, restraint and restriction
of Bass movement of Bass' own free will.

8.      Bass further asserts that while at CRC Bass submitted several verbal

and written request for review, consideration and recommendation of a **"RECALL OF COMMITMENT"** to Bass' assigned administrative representative, pursuant to the ***California Code of Regulations Title 15 Section 3075,*** due to the fact, that Bass had documented evidence and legal grounds that Bass' current and continuing physical custodial status at CRC under the control, management, supervision and care of the CDCR at CRC was in fact unlawful, illegal and without lawful authority. Bass' administrative representative and several other upper management administrative officials ignored Bass's request and refused to grant Bass any review, consideration and recommendation for a 'RECALL OF COMMITMENT' to affect the immediate release of Bass from physical custody and continued restraint and restriction of Bass' freedom to move and travel of Bass' own free will, thereby '*continuing to interfere with* Bass' *business activities affecting interstate and foreign commerce through the willful and intentional collection of an unlawful debt to acquire and maintain, directly or indirectly, any interest in or control of any enterprise which* Bass *was or is engaged in, or the activities of which affect, interstate or foreign commerce*'. Bass asserts the CEO of CRC, Matthew Martel did hold Bass to a condition of peonage approximately (16+) months beyond the scheduled released date that Bass should have been released on, which was on or about January 21, 2007.

9.      On January 11, 2008, CEO-Matthew Martel delivered physical custody of Bass to SDCSD on a detainer issued by the Superior Court of California, County of San Diego to forcibly compel the attendance of Bass in the Superior Court of California, County of San Diego for a court appearance on January 14, 2008.

10.      On January 14, 2008, Bass asserts the Superior Court of California,

County of San Diego did conspire and co-conspire to return Bass to a condition of peonage to prevent and restrict without lawful authority Bass' liberty to move and travel in order to maintain the labor and services of Bass in '*furtherance of the collection of an unlawful debt to acquire and maintain, directly or indirectly, any interest in or control of any enterprise which* Bass *was or is engaged in, or the activities of which affect, interstate or foreign commerce,* by denying Bass's written request to vacate and set aside Bass' criminal conviction based on the fact that SDDA-Dumanis was in violation of the California Constitution and Political Reform Act and Bass could no longer be physically restrained, confined and restricted of freedom of movement of Bass' own free will, because Dumanis' official public position as the SDDA and position as an Executive Officer of the Judicial Branch of the California State government was, in fact, a serious abuse of power and unlawful governmental influence, which amounted to a successful strategy, plan and scheme to unlawfully and illegally detain, seize, physically restrain, restrict and deny Bass' lawful and legal right to liberty, freedom of movement to travel for Bass' business, equal rights under the law, equal protection, freedom from slavery and involuntary servitude, freedom from arbitrary arrest of Bass' person and property and interference with interstate and foreign commerce through threats and violence, leading to '*successfully holding and returning* Bass *to a condition of peonage to serve a penal sentence in order to collect an unlawful debt to acquire and maintain, directly or indirectly, any interest in or control of any enterprise which* Bass *was or is engaged in, or the activities of which affect, interstate or foreign commerce* '.

**11.**   Bass remained under the physical custodial control of the SDCSD until <u>January 22, 2008</u>, where <u>Bass was delivered to the physical custody of</u>

the CEO at CSP-LA in Lancaster, California, County of Los Angeles in willful and intentional disobedience of the Superior Court of California, County of San Diego orders direct to the SDCSD to return Bass to the physical custody of the CEO at CRC-Matthew Martel *(see exhibit E)*. Bass submitted and filed several CDCR Form (602) Appeals/Grievances contesting the continued unlawful confinement and restriction of movement while at CSP-LA. Bass was subsequently returned to the physical custody of the CEO at CRC-Matthew Martel on February 10, 2008.

**12.**    On February 14, 2008, Bass appeared before the CRC administrative Unit Classification Committee composed of approximately (6) administrative officials for a hearing. Bass asserts that the committee members were verbally informed of Bass' continued unlawful and continued detention and imprisonment under the custody, care, management, supervision and control of the CDCR at CRC. Bass asserts the committee did knowingly verbally acknowledge to Bass that Bass was in fact correct on Bass' claims that an administrative error existed within the central file that the CEO of CRC and the CDCR maintained on Bass regarding the documented discrepancy that existed and was noted with Bass' release from physical custody and confinement at CRC. Bass was further instructed by CRC administrative officials to submit a CDCR Form (602) Appeal/Grievance addressing the issues of concern with regard to the immediate release of Bass from physical custody, control and confinement at CRC pursuant to the *California Code of Regulations Title 15 Section 3371.1;* regarding calculation of pre-prison and post sentence credit applications and release within (5) business working days upon notification that the individual is overdue for release from physical custody and confinement. Bass remained in physical custody and confinement at CRC

until May 9, 2008.

**13.**     On May 12, 2008, Bass reported to the DAPO San Diego Unit 2 office to meet with PA-Jacqueline Chandler as instructed by the CDCR. PA-Chandler did willfully and intentionally in violation of *18 U.S.C. §1581; PEONAGE, OBSTRUCTING ENFORCEMENT and §1589; FORCED LABOR, §1951; INTERFERENCE WITH COMMERCE BY THREATS OR VIOLENCE and §1962(b); RICO*, by verbally issuing a threat of serious harm to Bass, physical restraint against Bass, by means of a scheme, plan or pattern to cause Bass to believe that, if Bass did not sign Bass' 'Special Conditions of Parole' that Bass would suffer serious harm and physical restraint, by means of the abuse and threatened abuse of law and legal process and would result in immediate seizure of Bass's person and property and Bass would be returned to a condition of peonage and imprisonment for refusal to sign said 'special conditions' thereby, <u>forcing Bass 'under duress' to sign the CDCR and DAPO's special conditions imposed on Bass preventing and restricting Bass' liberty to move or travel restraining Bass' interstate and foreign commerce activities holding Bass to a 50-mile radius of movement with the County of San Diego.</u>

**14.**     On June 6, 2008, Bass reported for another interview with PA-Chandler at the DAPO San Diego Unit 2 office located on Kurtz Street in San Diego, California. Upon being called into the inner office by PA-Chandler, Bass was immediately surprised, ambushed, physically assaulted by two other unknown plain clothed individuals and forcibly pushed against a wall by PA-Chandler and a third unknown individual. Bass was immediately restricted of liberty of movement and told to wit, *"You better not move a muscle! Do you understand what I am telling you Bass?! Give me a reason to take you down?! Just stay calm and nothing bad will*

*happen.*" Bass verbally inquired to PA-Chandler, stating, *"What is going on? What did I do wrong? What is this all about?"* PA-Chandler stated to wit, *"Just be quiet Bass while I finish searching you! We will get to that in a second!"* Bass was immediately taken to the rear of the DAPO office under physical restraint escorted by PA-Chandler and another unknown individual and placed into a blue Ford compact vehicle. Bass was immediately taken to the San Diego County Central Jail, in downtown San Diego in the City of San Diego. While in transport of Bass, PA-Chandler asked Bass if Bass knew that there was a legally registered Heck & Kochler Semi-Automatic .45 Caliber handgun still registered to Bass? Bass asserts Bass was unaware that the handgun was still registered to Bass.

**Bass asserts no weapon of any sort or kind was or has been ever recovered, found or discovered by PA-Chandler or SDDAI-Cargel and/or any other local, state or federal law enforcement entity or agency during Bass' initial detention, seizure and search of Bass' person and property on December 14, 2005 in Encinitas, California to the present date.**

Bass asserts Bass willingly offered to submit a California Department of Justice Form of 'Notice No Longer In Possession' to PA-Chandler, the CDCR and DAPO in exchange for Bass' release from physical custody, which requires a signature by a local or state law enforcement or peace officer. PA-Chandler, SDDAI-Cargel, DAPO & BPH; Deputy Commissioner-Joseph Muga all refused to sign the 'Notice Of No Longer In Possession' completed by Bass and mailed via out-going institutional mail at RJD in July of 2008, while under the physical custodial receivership of the CEO of RJD from June 9, 2008 until September 3, 2008.

15.    On June 20, 2008, Bass appeared before BPH; Deputy Commissioner-

Joseph Muga to adjudicate an alleged violation of Bass' 'Special Conditions Of Parole', alleging that Bass was in fact in possession of a firearm/weapon in violation of CDCR, DAPO rules, regulations and policy and California State law, along with allegedly starting and/or maintaining a business without the approval of DAPO. BPH; Deputy Commissioner-Muga allegedly found probably cause to hold and return Bass to a condition of peonage and imprisonment, restricting and restraining Bass' liberty to move or travel affecting interstate and foreign commerce. BPH; Deputy Commissioner-Joseph Muga told Bass that Bass would be returned to a condition of peonage and imprisoned for a period of (9) months if Bass pleaded guilty to the allegations filed against Bass initiated by PA-Chandler and DAPO. Bass declined and was held an additional (10) days for a final BPH hearing which was held on June 30, 2008 at RJD.

**16.**    On June 30, 2008, Bass appeared again before BPH; Deputy Commissioner-Joseph Muga for a final BPH review on the allegations of access to a firearm and not obtaining prior approval of Bass' employment by DAPO. Prior to commencement of BPH proceedings at RJD, BPH; Deputy Commissioner-Joseph Muga stated, *"Oh good! I guess I have the advantage of hearing this final review of Bass' case, since I was the original hearing officer at the 'Probable Cause Hearing' (10) days ago. I remember clearly making an offer to Bass of (9) months of confinement and custody!"* Bass asserts BPH; Deputy Commissioner-Joseph Muga did willingly and intentionally abuse his authority under the color of law and official right when Muga knew that Bass has a lawful and legal right to a final BPH review of the allegations against Bass by *'a neutral and detached hearing officer!'*" After approximately 2 and a half hours of testimony from witnesses for the State of California and DAPO, BPH; Deputy Commissioner-Joseph

Muga rendered a judgment finding of guilty as originally accused and imposed a (9) month return to custody, confinement and imprisonment sanction against Bass effectively continuing to hold and returning Bass to a condition of peonage in willful and intentional violation of *42 U.S.C. §1994; (PEONAGE PROHIBITED), 18 U.S.C. §§1589, 1592 and 1962(b); RICO.*

17.      Bass asserts that RJD-CEO, Case Records Manager/Supervisor and CSP-CEO, Case Records Manager/Supervisor did willingly conspire and act as co-conspirators to prevent and restrict without lawful authority, Bass' liberty to move or travel, in order to maintain the labor or services of Bass by refusing to correct an administrative error documented in the central file maintained on Bass by the CDCR at RJD and CSP by Case Records Managers and Supervisors revealing that Bass' release date from custody was grossly inaccurate and information contained within Bass' central file adversely affected Bass liberty of movement affecting interstate and foreign commerce activities approximately (16+) months beyond the scheduled date Bass was to be released from custody, confinement and imprisonment at RJD & CSP. Bass asserts the CEO's at RJD and CSP were in willing and knowing violation of *18 U.S.C. §§1581, 1589, 1592 and 1962.*

18.      On September 3, 2008, Bass was transferred from RJD in San Diego County, California under physical restraint and subsequently delivered to the physical custody of the CEO at CSP in Imperial County, California under the physical control, management, supervision, custody and care of Michael Smolesky until Bass was released from physical custody at CSP on October 20, 2008.

19.      On October 21, 2008 Bass again reported to DAPO San Diego Unit 2 located on Kurtz Street in San Diego, California for a meeting with PA-Chandler. Bass instead met with PA-J. Blumm, the officer of the day. PA-

Blumm did willingly and knowingly issuing, a verbal threat of serious harm to Bass, physical restraint against Bass, by means of a scheme, plan or pattern to cause Bass to believe that, if Bass did not sign Bass' 'Special Conditions of Parole' (*see exhibit D*) that Bass would suffer serious harm and physical restraint, by means of the abuse and threatened abuse of law and legal process and would result in the immediate seizure of Bass' person and property and returned to a condition of peonage and imprisonment for refusal to sign said 'special conditions' thereby forcing Bass again, under duress to sign the CDCR and DAPO's special conditions imposed on Bass, preventing and restricting Bass' liberty to move or travel restraining Bass' interstate and foreign commerce activities, holding Bass to a 50-mile radius of movement within the County of San Diego, in addition to preventing Bass from maintaining a financial institution savings account in the State of California, any other state outside of California and any other country outside of the United States of America; seriously, maliciously and intentionally restraining and restricting Bass' business activities affecting and interfering with interstate and foreign commerce by threats and violence.

## **CONCLUSION**

Bass asserts the claims and complaints named and addressed herein in this Federal Civil Antitrust and Rico Action, when viewed in its complete context and detail with regard to the U.S. Federal Statutory purpose, application and construction of whom and what is/can and should be protected by the law under the provisions of the *Clayton, Hobbs and Rico Acts,* along with Bass' claims under *42 U.S.C. §§1981 and 1994 (PEONAGE PROHIBITED),* the court is required to determine if the claims and complaints alleged are so serious and damaging to the Plaintiff, that

bringing such a serious claim of consistent and intentional denial, deprivation, restraint and restrictions against a party, so blatant or indirect that violates the law and legal rights guaranteed by a State's Constitution and the U.S. Constitution, which is the Supreme Law of The Land, the court should consider if the claims could result in *'irreparable harm'* to the complainant, that are or may not be plainly evident in one specific claim or complaint, but in it's entirety would, **if defendants are allowed to** **continue with their actions in a such hostile and significantly oppressive** **environment** that, if left unsupervised, unsanctioned, controlled and unchecked by any other higher legal authority on the local, State or Federal levels, the grieving party could quite and definitely possible be subjected to continued exposure of even more serious damages than the ones claimed and complained of, which could result in retaliatory actions by a defendant whom has unlimited resources, power and authority increasing substantially any civil legal and criminal liability to the parties involved in this action.

In conclusion and summary, Bass had and retains a lawful and legal right to start any lawful business, be a owner, minority owner or shareholder of any business within the State of California, the United States of America and outside of the United States of America, anywhere that business is located and operates. Bass had and has a protected lawful and legal right to freedom of movement or travel for Bass' business, which would and do include interviews and meetings, along with providing services and products within Bass' specific area of knowledge, training and expertise. All of which would be within Bass' ability and a required prerequisite necessity for said required services, training, knowledge and expertise that Bass currently possesses by any prospective and potential client, organization, entity,

agency, affiliates, associates, agents, officers or private/public corporations.

All named defendants did collectively, willingly, knowingly and intentionally on December 14, 2005 to the present date and currently ongoing, continue to deny, deprive, restrain, restrict and interfere with Bass' *lawful and legally protected right to freedom of movement, freedom from restraint and restriction of trade, interstate and foreign commerce, freedom from being placed into a condition of peonage to serve a penal sentence in collection of an unlawful debt to acquire and maintain, directly or indirectly, any interest in or control of any enterprise which* **Bass** *was or is engaged in, or the activities of which affect, interstate or foreign commerce* by imposing extremely restrictive verbal and written sanctions on Bass to the present date, informing Bass through threats of physical restraining Bass and immediate returning Bass to a condition of peonage, if Bass did not agree to sign Bass 'Special Conditions' prohibiting Bass from conducting any financial business or starting a non-profit organization, to maintain and/or re-establish a livelihood and secure lawful employment.  Additionally, Bass asserts the current existing sanctions initiated and enforced on Bass grossly hinder Bass and prevent Bass from potentially receiving Federal Financial Aid to complete Bass' financial aid application so Bass can be allowed to attend National University in San Diego in the fall of 2009 and obtain a collegiate education.

DATE: NOVEMBER 19, 2008           RESPECTFULLY SUBMITTED,

                                  ROBERT C BASS
                                  PRO QUERENTE

# (EXHIBIT A)

## COLOR COPY OF U.S. PASSPORT
## OF
## ROBERT CURTIS BASS

The Secretary of State
of the United States of America
hereby requests all whom it may concern to permit the citizen/
national of the United States named herein to pass
without delay or hindrance and in case of need to
give all lawful aid and protection.

Le Secrétaire d'État
des États-Unis d'Amérique
prie par les présentes, toutes autorités compétentes de laisser passer
le citoyen ou ressortissant des États-Unis titulaire du présent passeport,
sans délai ni difficulté et, en cas de besoin, de lui accorder
toute aide et protection légitimes.

SIGNATURE OF BEARER/SIGNATURE DU TITULAIRE

NOT VALID UNTIL SIGNED



# UNITED STATES OF AMERICA

| Type/Caté-gorie | Code of issuing / code du pays | PASSPORT NO./NO. DU PASSPORT |
|---|---|---|
| P | USA | 016978490 |

Surname / Nom
BASS
Given names / Prénoms
ROBERT CURTIS
Nationality / Nationalité
UNITED STATES OF AMERICA
Date of birth / Date de naissance
18 FEB/FEV 69
Sex / Sexe   Place of birth / Lieu de naissance
M      NEW YORK, U.S.A.
Date of issue / Date de délivrance        Date of expiration / Date d'expiration
01 OCT/OCT 01          30 SEP/SEP 11
Authority / Autorité
PASSPORT AGENCY
WASHINGTON, D.C.

Amendments/
Modifications
SEE PAGE
24

P<USABASS<<ROBERT<CURTIS<<<<<<<<<<<<<<<<<<<<<
016978490 6USA6902184M1109302<<<<<<<<<<<<<<<0



**(EXHIBIT B)**

**COPY OF TRUST RESOLUTION AND
MINUTE MEETING WITH
BOARD OF TRUSTEES
FOR
SLATECO ENTERPRISES TRUST
AND POWER OF ATTORNEY ASSIGNMENT
TO
ROBERT BASS**



**SLATECO ENTERPRISES TRUST**

3709 DEER FLATS STREET, LAS VEGAS NV 89129

(702) 838-6741 OFFICE (702) 974-1171 FAX (702) 413 2255 MOBILE

## TRUST RESOLUTION

Reference:   A.   Minutes of the Administrators meeting held on  December 14, 2005

Meeting of the Board of Administrators of *Slateco Enterprises Trust* held in accordance with the Trust Organization Documents.

Present at the meeting were the following Administrators: Perry W. Slaton, Elizabeth A. Gallon, Qiana R. Johnson, Curtis Barr Jr., Steve Patterson, and Robert Bass.

Present at the meeting was the Secretary of the Board: Elizabeth Gallon

Meeting of Administrators undertook the following Trust Resolution which has been recorded as "Reference A" in the Minutes of the Trust Meeting Book.

To utilize Funds on Deposit in the amount of One Billion United States Dollars (US1,000,000,000.00) drawn on Barclays Bank located at London, UK for Private Placement contract.

Additionally, Robert Bass, the chief compliance officer, is authorized to open Trust bank accounts, enter into project funding and /or fee agreements to receive and distribute all profits from the programs, enter into agreements as necessary, and to make selections as to which program(s) will best suit the placement of these funds so as to assure financial returns. The necessary authority and powers required to undertake these tasks and responsibilities are hereby granted to Robert Bass, holder of US Passport # 016978490.

**It is therefore resolved that the appointed officer shall have the authority to negotiate all details and sign the final contract with the Trading and Bank Officers. There being no further business, the meeting was declared closed, and in witness thereof, the directors signed below on the date first written above.**

*(Signature)*                                      *(Signature)*
Name        Perry W. Slaton        Name    Elizabeth A. Gallon
**Title        Managing Director        Title      Trust Administrator**
Nevada Drivers License #4100732227 No. / Country   USA        California Drivers License #N9912983 No. / Country  USA

# (EXHIBIT C)

## LETTER TO ROBERT BASS
## REGARDING SCHEDULED TRIP



**SLATECO ENTERPRISES TRUST**

3709 DEER FLATS STREET, LAS VEGAS NV 89129

(702) 838-6741 OFFICE (702) 974-1171 FAX (702) 413 2255 MOBILE

**Business Travel**
**Re: Slateco Employees Trip to Dusseldorf Germany**


**This is to confirm that the following employee is required to travel to Dusseldorf Germany in order to conduct business on behalf of the Trust.**

**Robert Bass-Trust Administrator/Chief Compliance Officer**

**Enclosed please find a copy of the Itinerary.**

**You will need to take steps to secure a passport and travel visas for the trip.**

**Thank you.**

**Perry W. Slaton**
**Managing Director**

# (EXHIBIT D)

# SPECIAL CONDITIONS OF PAROLE

NOTICE AND CONDITIONS OF PAROLE
CDC 1515 (REV 05/01)

You will be released on parole effective 05/09/08 for a period of 3 years. This parole is subject to the following notice and conditions. Should you violate conditions of this parole, you are subject to arrest, suspension and/or revocation of your parole.

You waive extradition to the State of California from any state or territory of the United States or from the District of Columbia. You will not contest any effort to return you to the State of California.

When the Board of Prison Terms determines, based upon psychiatric reasons, that you pose a danger to yourself or others, the Board may, if necessary for psychiatric treatment, order your placement in a community treatment facility or state prison or may revoke your parole and order your return to prison.

You and your residence and any property under your control may be searched without a warrant by an agent of the Department of Corrections or any law enforcement officer

If another jurisdiction has lodged a detainer against you, you may be released to the custody of that jurisdiction. Should you be released from their custody prior to the expiration of your California parole, or should the detainer not be exercised, you are to immediately contact the nearest Department of Corrections Parole and Community Services Division Office for instructions concerning reporting to a parole agent.

You have been informed and have received in writing the procedure for obtaining a Certificate of Rehabilitation (4852.21PC).

## CONDITIONS OF PAROLE

1. **SPECIAL CONDITIONS:** a) Relate to the crime for which you were convicted, b) Relate to conduct, which is itself criminal, c) Prohibit conduct which may be related to future criminality. You are subject to the following special condit

**1.** You shall participate in anti-narcotic testing as directed by DAPO.

**2.** You will participate in a drug treatment program or Proposition 36 Program as directed by DAPO or parole agent.

**3.** You may not contact your crime victims(s) **(FIRST NATIONAL BANK RANCHO SANTA FE BANK, BUDGET RENT A CAR)** their families or friends or (co-defendants, or associates) involved in your commitment offense. This includes in person, by telephone, mail, computer, or through a third party.

**4.** Your employment is to be approved by DAPO.

**5.** You will not use, possess or have access to any others person's identification card, ATM card, credit card, personal check, bank check, savings account or any fiduciary items.

**6.** You will not operate a motor vehicle without approval from your parole agent.

**7.** All identification must be in your name.

**8.** ALL mailing addresses will be reported at your legal place of residence no Postal Annex or alternative mailing address.

**9.** You will not open any saving accounts in the state of California, out of state, or out of the country saving accounts.

**10.** You are not to use any fiduciary corporation titles IE: **(HIGH GEAR ATHLETICS)** or any other cooperation name without the consent of the parole agent.

Reasons for the imposition of special conditions of parole:
1 & 2 SUBJECT IS ELIGIABLE FOR THE PROPOSITION 36 PROGRAM.
3&4&6&7& 8. BASED ON THE SUBJECT'S COMMITMENT OFFENSE THE IMPOSITION OF THIS CONDITION WILL ASSIST IN THE GOAL OR PREVENTING THE SUBJECT FROM COMMITTING SUBSEQUENT CRIMINAL OFFENSES UNDER FEDERAL, STATE AND LOCAL LAW.
9 & 10. BASE UPON THE NEXUS OF THE SUBJECT'S COMMICMENT OFFENSE AND RE-ARREST ON ***, SUBJECT REQUESTING TO OPEN SAVING ACCOUNTS OUT OF STATE. THE IMPOSITION OF THIS CONDITION WITH THE GOAL OF PREVENTING THE SUBJECT FROM COMMITTING ANY OTHER CRIMES.

| (initials) I acknowledge my special conditions of parole | _Pat Mi_ | 07-02-08 |
| Parolee's Initials | SIGNATURE OF UNIT SUPERVISOR | DATE SIGNED |

2. RELEASE, REPORTING, RESIDENCE AND TRAVEL: Unless other arrangements are approved in writing, you will report to your parole agent the first working day following your release. Any change of residence shall be reported to your parole agent in advance. You will inform your parole agent within 72 hours of any change of employment location, employer or termination of employment.

3. PAROLE AGENT INSTRUCTIONS: You shall comply with all instructions of your parole agent and will not travel more than 50 miles from your residence without his/her approval. You will not be absent from your county of residence for a period of more than 48 hours and not leave the State of California without prior written approval of your parole agent.

4. CRIMINAL CONDUCT: You shall not engage in conduct prohibited by law (state, federal, county or municipal). You shall immediately inform your parole agent if you are arrested for a felony or misdemeanor crime. Conduct prohibited by law may result in parole revocation even though no criminal conviction occurs.

5. WEAPONS: You shall not own, use, have access to, or have under your control: (a) any type of firearm or instrument or device which a reasonable person would believe to be capable of being used as a firearm or any ammunition which could be used in a firearm: (b) any weapon as defined in state or federal statutes or listed in California Penal Code Section 12020 or any instrument or device which a reasonable person would believe to be capable of being used as a weapon as defined in Penal Code 12020; or (c) any knife with a blade longer than two inches, except kitchen knives which must be kept in your residence and knives related to your employment which may be used and carried only in connection with your employment; or (d) a crossbow of any kind.

6. You shall sign the parole agreement containing the conditions of parole specified in Board of Prison Terms (BPT) Rules Section 2512 and any special conditions imposed as specified in BPT Rules Section 2513. Penal Code Section 3060.5 provides that the BPT shall revoke the parole of any prisoner / parolee who refuses to sign the Notice and Conditions of Parole. You have the right to appeal the special conditions of parole. Special conditions imposed by the Parole and Community Service Division may be appealed pursuant to California Code of Regulations (CCR), Section 3084 and 3085. Special Conditions of parole imposed by the BPT may be appealed pursuant to CCR Section 2050.

I have read or have had read to me and understand the conditions of parole as they apply to me.

| CDC NUMBER | PAROLEE'S NAME (PRINT OR TYPE) | PAROLEE'S SIGNATURE | DATE |
| F25881 | BASS ROBERT | _(signature) UNDER DURESS_ | 10-21-08 |

TO BE COMPLETED BY STAFF:
Does the inmate/parolee have a qualifying disability requiring effective communication? Yes ( No)
If yes, cite the source document and / or observations: _____
What type of accommodation / assistance was provided to achieve effective communication to the best of the inmate / parolee's ability?

| STAFF NAME (Print or Type) | SIGNATURE OF STAFF | DATE SIGNED |
| Jacqueline Chandler | _John Blum for_ | 10-21-08 |

You will be released on parole effective 05/09/08 for a period of 3 years. This parole is subject to the following notice and conditions. Should you violate conditions of this parole, you are subject to arrest, suspension and/or revocation of your parole.

You waive extradition to the State of California from any state or territory of the United States or from the District of Columbia. You will not contest any effort to return you to the State of California.

When the Board of Prison Terms determines, based upon psychiatric reasons, that you pose a danger to yourself or others, the Board may, if necessary for psychiatric treatment, order your placement in a community treatment facility or state prison or may revoke your parole and order your return to prison.

You and your residence and any property under your control may be searched without a warrant by an agent of the Department of Corrections or any law enforcement officer

If another jurisdiction has lodged a detainer against you, you may be released to the custody of that jurisdiction. Should you be released from their custody prior to the expiration of your California parole, or should the detainer not be exercised, you are to immediately contact the nearest Department of Corrections Parole and Community Services Division Office for instructions concerning reporting to a parole agent.

You have been informed and have received in writing the procedure for obtaining a Certificate of Rehabilitation (4852.21PC).

## CONDITIONS OF PAROLE

1. **SPECIAL CONDITIONS**: a) Relate to the crime for which you were convicted, b) Relate to conduct, which is itself criminal, c) Prohibit conduct which may be related to future criminality. You are subject to the following special condit

**1.** You shall participate in anti-narcotic testing as directed by DAPO.

**2.** You will participate in a drug treatment program or Proposition 36 Program as directed by DAPO or parole agent.

**3.** You may not contact your crime'victims(s) their families or friends. This includes in person, by telephone, mail, computer, or through a third party.

**4.** Your employment is to be approved by DAPO.

**5.** You will not use, possess or have access to any others person's identification card, ATM card, credit card, personal check, bank check, or any fiduciary items.

**6.** You will not operate a motor vehicle without approval from your parole agent.

Reasons for the imposition of special conditions of parole: _7. all identification must be in your own name_

1 &2 nature of commitment offense. 3,4,5,6, related to commitment offense.

| _Parolee Initials_  I acknowledge my special conditions of parole | SIGNATURE OF UNIT SUPERVISOR | DATE SIGNED 04-08-08 |

**2. RELEASE, REPORTING, RESIDENCE AND TRAVEL:** Unless other arrangements are approved in writing, you will report to your parole agent the first working day following your release. Any change of residence shall be reported to your parole agent in advance. You will inform your parole agent within 72 hours of any change of employment location, employer or termination of employment.

**3. PAROLE AGENT INSTRUCTIONS:** You shall comply with all instructions of your parole agent and will not travel more than 50 miles from your residence without his/her approval. You will not be absent from your county of residence for a period of more than 48 hours and not leave the State of California without prior written approval of your parole agent.

**4. CRIMINAL CONDUCT:** You shall not engage in conduct prohibited by law (state, federal, county or municipal). You shall immediately inform your parole agent if you are arrested for a felony or misdemeanor crime. Conduct prohibited by law may result in parole revocation even though no criminal conviction occurs.

**5. WEAPONS:** You shall not own, use, have access to, or have under your control: (a) any type of firearm or instrument or device which a reasonable person would believe to be capable of being used as a firearm or any ammunition which could be used in a firearm: (b) any weapon as defined in state or federal statutes or listed in California Penal Code Section 12020 or any instrument or device which a reasonable person would believe to be capable of being used as a weapon as defined in Penal Code 12020; or (c) any knife with a blade longer than two inches, except kitchen knives which must be kept in your residence and knives related to your employment which may be used and carried only in connection with your employment; or (d) a crossbow of any kind.

**6.** You shall sign the parole agreement containing the conditions of parole specified in Board of Prison Terms (BPT) Rules Section 2512 and any special conditions imposed as specified in BPT Rules Section 2513. Penal Code Section 3060.5 provides that the BPT shall revoke the parole of any prisoner / parolee who refuses to sign the Notice and Conditions of Parole. You have the right to appeal the special conditions of parole. Special conditions imposed by the Parole and Community Service Division may be appealed pursuant to California Code of Regulations (CCR), Section 3084 and 3085. Special Conditions of parole imposed by the BPT may be appealed pursuant to CCR Section 2050.

I have read and I have had read to me and understand the conditions of parole as they apply to me.

| CDC NUMBER | PAROLEE'S NAME (PRINT OR TYPE) | PAROLEE'S SIGNATURE | DATE |
| F25881 | ROBERT C. BASS | _Robert C. Bass_ | 4-15-08 |

TO BE COMPLETED BY STAFF:
Does the inmate/parolee have a qualifying disability requiring effective communication? Yes (No)
If yes, cite the source document and / or observations: _____
What type of accommodation / assistance was provided to achieve effective communication to the best of the inmate / parolee's ability?

| STAFF NAME (Print or Type) | SIGNATURE OF STAFF | DATE SIGNED |
| Jacqueline Chandler | CCI A. Aguilar | 4-15-08 |

INMATE STATED ORIGINAL SIGNATURE STANDS. 4-24-08 @ 1045 HRS CCI A. Aguilar.
WITNESSED BY CCII R. BALES

INMATE BASS, R F25881 REVOKED HIS
SIGNATURE ON THIS DOCUMENT ON 4-15-08 @ 1250 HRS
CCI A. Aguilar

I HEREBY REVOKE MY SIGNATURE ON THIS DOCUMENT, INDICATING MY
REFUSAL TO SIGN CONDITIONS OF PAROLE. I UNDERSTAND BY SIGNING BELOW, THIS ACTION
COULD RESULT IN DISCIPLINARY ACTION AND REFERRAL TO BPH FOR PAROLE VIOLATION PROCESSING
4-15-08 @ 1250 HRS.          R. BASS F25881   X UNDER DURESS

# (EXHIBIT E)

# SUPERIOR COURT DETAINER

# FOR

# ROBERT CURTIS BASS

VANESSA
515-8664

*DA01. 57*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
**CENTRAL DIVISION**
220 W. Broadway, San Diego, CA 92101

F I L E D
Clerk of the Superior Court
DEC 0 6 2007
By L. BROWN, Deputy

| | |
|---|---|
| The People of the State of California, | No:  SCD195097 |
| Plaintiff, | DA No:  ABQ511 |
| vs. | **DECLARATION AND ORDER** |
| | **FOR PRODUCTION OF** |
| ROBERT BASS, | **DEFENDANT FROM:** |
| CDC#: F25881 | <u>CALIFORNIA REHABILITATION CENTER (CRC)</u> |
| Defendant. | |

## DECLARATION

Declarant states that he is a deputy district attorney, that the above named defendant is now in custody in the above named institution; that the presence of said person is needed to answer charges and for all further proceedings in this action.

I declare upon information and belief under penalty of perjury that the foregoing is true and correct.

Executed at San Diego, California, this December 6, 2007.

_____
Deputy District Attorney - Declarant

## ORDER

TO THE SHERIFF OF THE COUNTY OF SAN DIEGO

It appearing to the court that the presence of the above named defendant is needed for Re-Sentencing in this action, YOU ARE HEREBY AUTHORIZED AND DIRECTED to proceed to the above named institution, obtain custody of the above named defendant, transport the defendant and produce said person at 9:00 a.m., on January 14,  2008, or as soon thereafter as possible, in Department 57 of the Superior Court of the State of California, County of San Diego, 220 W. Broadway, San Diego, California, to hold said person in custody pending completion of the proceedings and then return said person to the custody of the <u>Warden at  California Rehabilitation Center (CRC)</u>

TO THE <u>WARDEN, CALIFORNIA REHABILITATION CENTER (CRC)</u>

YOU ARE HEREBY AUTHORIZED AND DIRECTED to deliver the above named defendant into the custody of the Sheriff of San Diego County, upon his demand, and to again receive custody of the defendant upon return to you.

The foregoing is a full, true and correct copy of
the original on file in this office.

ATTEST:   MICHAEL M. RODDY
                  Clerk of the Superior Court

By _____
                  Deputy

DATED: DEC 0 6 2007

_____
Judge of the Superior Court

JEFFREY F. FRASER, JUDGE

℠JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED

## I. (a) PLAINTIFFS

ROBERT CURTIS BASS

## DEFENDANTS

COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, STATE BAR OF CALIFORNIA, SUPERIOR COURT OF SAN DIEGO COUNTY

(b) County of Residence of First Listed Plaintiff  **SAN DIEGO COUNTY**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  SAN DIEGO COUNTY
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.
BY: KMH DEPUTY

(c) Attorney's (Firm Name, Address, and Telephone Number)

Robert C Bass, P.O. 742., Solana Beach, Ca 92075
(718) 619-1643   Fax: (360) 246-7283

Attorneys (If Known)

N/A

'08 CV 2135 MMA NLS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question (U.S. Government Not a Party)
☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
CLAYTON 15 USC 12, RICO 18 USC 1961 and 1962 AND HOBBS ACT 18 USC 1951(a), 42 USC

Brief description of cause:
INTERFERENCE WITH INTERSTATE OR FOREIGN COMMERCE BY THREATS AND VIOLENCE,

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 1,500,000,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions): JUDGE  JEFFERY MILLER   DOCKET NUMBER  08cv274

DATE
11/19/2008

SIGNATURE OF ATTORNEY OF RECORD
Robert C Bass, Pro Quer

### FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

